IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 03-091-SLR-1 |
| ) | |
| ANDRE M. HUGGINS, ) | |
| ) | |
| Defendant. ) | |

Shannon Thee Hanson, Assistant United States Attorney. United States Attorney's Office, District of Delaware, Wilmington, Delaware. Attorney for Plaintiff United States of America.

Andre M. Huggins, Butner, North Carolina. Pro Se Defendant.

**MEMORANDUM OPINION**

Dated: April 2, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On December 12, 2007, defendant Andre M. Huggins ("defendant") filed a *pro se* motion pursuant to 18 U.S.C. § 983(e)[1] seeking to set aside a declaration of forfeiture. (D.I. 313) Defendant contends that he never received notice of the government's administrative forfeiture proceedings on items seized during the execution of search warrants on August 26, 2003. (*Id.* at 4) Defendant asserts that this failure on the government's part to give him notice constitutes a violation of his Fifth Amendment due process rights. (*Id.* at 5-6) Defendant asks that all property seized on August 26, 2003, be returned to him or, in lieu of those items being returned, he be compensated for property "sold, damaged, destroyed, or lost." (*Id.* at 1)

The government ("plaintiff") has responded to defendant's motion by filing a motion for summary judgment. (D.I. 321) Plaintiff contends that defendant cannot satisfy either of the requirements to receive relief under 18 U.S.C. § 983(e) because defendant received actual notice on both the day of the seizure and in 2003 while he was detained at Salem County Correctional Facility ("SCCF"). (*Id.* at 19-21) Plaintiff also asserts that defendant has failed to demonstrate a colorable ownership interest in monies, totaling $118,000, seized from a residence in the name of Heather Blake and, therefore, lacks standing to challenge the administrative forfeiture of those monies. (*Id.* at 18-19) Defendant filed a reply brief and a declaration in response to plaintiff's motion.

---

[1] 18 U.S.C. 983(e) provides, in pertinent part:

"(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property...".

(D.I. 326, 327, 327-1, 327-2, 327-3, 327-4, 327-5)  The court has jurisdiction over the present action pursuant to 28 U.S.C. § 1355.  The court will treat plaintiff's motion as a civil equity proceeding and will review whether the administrative forfeiture proceeding satisfied statutory and due process requirements.  For the reasons set forth below, the court grants plaintiff's motion for summary judgment.

## II. BACKGROUND

On August 26, 2003, a search warrant was executed on defendant's home located at 30 Blue Spruce Drive, Bear, Delaware.  (D.I. 324 at 2, 327 at ¶ 1, D.I. 322, ex 1)  This warrant was executed as part of a Drug Enforcement Administration ("DEA") and Internal Revenue Service ("IRS") investigation.  (D.I. 313 at 2, 324 at 2)  Special Agent Eric G. Miller ("Agent Miller") of the DEA was the agent in charge of the search.  (D.I. 324 at 2)  During the course of executing the initial search of defendant's residence, agents "observed significant evidence of unexplained wealth" and obtained a second search warrant for the residence so they could seize additional items.[2]  (Id., D.I. 322, ex 4)  During the time of the search, defendant remained in the house, first in his bedroom and then in a back bedroom.  (D.I. 327 at ¶ 5)  Agent Miller states that defendant signed

---

[2]The warrant reads in part:

"Affidavit(s) having been made before me by Special Agent David Zon who has reason to believe that in the District of Delaware there is now certain property which is subject to forfeiture to the United States, namely two sony rear video projectors, and certain other personalty located at 30 Blue Spruce Drive, Bear, Delaware (See Attachment A) which are subject to seizure and forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 853(a) and (f)...."

D.I. 322, ex 4

three DEA Form 12s, which listed the items that had been seized. (D.I. 322 at ¶ 6; ex. 5) Defendant acknowledges receiving a "Receipt for Cash and Other Items".[3] (D.I. 326 at 2) Agent Miller contends that, when defendant was taken out of the residence, the items seized were "laid out on or near the pool table located in Mr. Huggins' home in a room without a door immediately adjacent to the front door of the home" and, therefore, defendant "had to have seen the property laid out there." (D.I. 322 at ¶ 7) Defendant denies this assertion. (D.I. 327 at ¶ 13)

In addition to the aforementioned items seized from within defendant's residence, another search warrant authorized the seizure of three automobiles belonging to defendant.[4] (D.I. 322, ex. 3) All three automobiles were seized on August 26, 2003. (D.I. 322 at ¶ 7 ) Defendant admits that he knew, on August 26, 2003, that the three automobiles had been seized. (D.I. 327 at ¶ 14)

---

[3]Defendant claims that there is no notice of seizure on the "Receipt for Cash or Other Items." Further, defendant states that nothing on the form indicates "the government[']s intent to forfeit the property seized" or gives "the person notice of his time frame to file a claim and where." (D.I. 326 at 2) In fact, based on a copy of Form 12 provided by plaintiff, the only language to be found on the form is, "I hereby acknowledge receipt of the following described cash or other item(s) which was given into my custody by the above named individual." (D.I. 322, ex. 5)

[4]The warrant reads in part:

"Affidavit(s) having been made before me by Special Agent Eric Miller who has reason to believe that in the District of Delaware there is now certain property which is subject to forfeiture to the United States, namely One 1998 Jaguar XK8 Convertible, VIN # SAJGX2245WC021778, One 2000 Cadillac, VIN # 1G6KF5797YU172493, One 2001 GMC Denali, VIN # 1GKFK66U61J264244 which are subject to seizure and forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f)...."

D.I. 322, ex 3

On August 26, 2003, a separate search warrant in connection with the DEA and IRS investigation into defendant was executed at 105 Mederia Circle, Newark, Delaware. (D.I. 322, ex 2) This residence was in the name of Heather Blake ("Blake"), who was believed to be a girlfriend of defendant. (D.I. 322 at ¶ 3) During the course of the search at 105 Mederia Circle, $118,000 in cash was discovered. (D.I. 322, ex 2) At some point, on the evening of August 26, 2003, defendant was questioned about items that might be found at 105 Mederia Circle. According to defendant's own testimony at his suppression hearing on August 9, 2004, defendant stated to authorities that "[Blake] was holding a scale and [Blake] was holding a couple dollars for [him]." (D.I. 72 at 219-20) When asked by authorities how much a couple of dollars was, defendant answered, "about $10,000." (*Id.*)

Following the execution of the search warrants, defendant was detained. On August 27, 2003, defendant was taken to SCCF. (D.I. 327 at ¶ 18, D.I. 324 at 3) Prison records at SCCF indicate that defendant remained detained there until July 27, 2005. (D.I. 320 at 2) On October 21, 2003, while defendant was located at SCCF, the DEA initiated administrative forfeiture action on the property seized from defendant on August 26, 2003. The DEA mailed defendant forfeiture notices for ten items or groups of items.[5] (D.I. 323, exs. 40, 56, 67, 78, 94, 101, 108, 115, 126, 133) Each notice was sent to defendant by certified mail. The DEA mailed notices for each item to 30 Blue Spruce

---

[5]The items included in the notifications were: one 1998 Jaguar XK8 Convertible, one 2001 GMC Denali XL SUV, one 2000 Cadillac Deville Sedan, $118,000.00 US Currency, $1,199.00 US Currency, York and Nautilis Home Gym System, three fur coats, 12 items of assorted jewelry, 296 items of electronic equipment including 267 DVDs, and 84 various sports jerseys. (D.I. 323, exs. 40, 56, 67, 78, 94, 101, 108, 115, 126, 133)

Drive, to 105 Mederia Circle, and to 125 Cemetary Road, Woodstown, NJ 08098, the address for SCCF. The notices sent to SCCF included defendant's prisoner ID number. (*Id.*) On October 27, 2003, Jeff Mills, a prison employee at SCCF, went to the Woodstown New Jersey Post Office and signed for the certified letters addressed to defendant. (D.I. 323, exs. 41, 57, 68, 79, 95, 102, 109, 116, 127, 134) The Warden of SCCF, Ray Skradzinski ("Warden Skradzinski"), recalls that defendant received forfeiture of property notices but cannot recall the specific date that they arrived. (D.I. 320 at ¶ 4) Warden Skradzinski states that he instructed Sergeant Edward Lape ("Sergeant Lape") to deliver the notices to defendant and that Sergeant Lape later told him that he had done so. (*Id.* at ¶ 4, ¶ 5) A declaration by Sergeant Lape confirms that he was instructed to deliver the forfeiture notices to defendant. (D.I. 319 at ¶ 3) Sergeant Lape further states that, while he cannot remember the specific date he delivered the notices to defendant, he does recall personally delivering them to defendant. (*Id.*)

The DEA received no response from defendant to any of the notices it sent. The DEA, in accordance with 19 U.S.C. § 1607(a), published notices in The Wall Street Journal regarding the property. (D.I. 323, ex 82) These notices were published for three consecutive weeks.[6] (*Id.*) Between January 2, 2004, and March 30, 2004, the DEA completed forfeiture proceedings on the property listed in the notices sent to defendant.

Defendant contends that he never received any forfeiture notices while at SCCF. (D.I. 313 at 4) Defendant claims that he did not learn that any of his property had been

---

[6] The dates of the notices were; Monday November 10, 2003, Monday November 17, 2003, and Monday November 24, 2003. (D.I. 323, ex 82)

5

administratively forfeited until March 29, 2005, when he received correspondence from his attorney indicating that defendant's GMC Denali had been sold by the US Marshals Service. (*Id.* at 3-4) Defendant further alleges that he filed two prison grievances regarding his missing forfeiture notices. (D.I. 327 at ¶ 25, ¶ 27) Defendant says that an investigation was conducted and that prison officials informed him that they had "no record of [his] reception of these notices, or what happened to the notices after Sgt. Mills signed for them on October 27, 2003." (*Id.* at ¶ 32) Defendant also states that he was permitted to look at SCCF's computer incoming mail log and that there was no record indicating defendant had received any forfeiture notices in 2003 or 2004. (*Id.* at 38) From this, defendant surmises that the forfeiture notices that Under Sherif Skradzinski and Sergeant Lape recall seeing and delivering to defendant were the ones sent by his attorney in 2005. (*Id.* at ¶ 39)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d

300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

As it relates to the $118,000 in cash seized at 105 Mederia Circle, plaintiff contends that defendant lacks standing to challenge the administrative forfeiture because defendant has not asserted an ownership interest in the money. (D.I. 324 at 19) To demonstrate a colorable ownership or possessory interest, and satisfy the Article III standing requirement, an individual must show that he independently exercised some dominion or control over the property. *See United States v. Contents of Accounts Nos. 3034504504 and 144-07143*, 971 F.2d. 974, 984 (3d Cir. 1992). Unexplained naked possession by a "straw owner" has been considered insufficient to establish colorable

7

ownership to meet the Article III standing requirement. *Id.* at 985-86; *see also United States v. Currency U.S. $42,500.00*, 283 F.3d 977, 983 (9th Cir. 2002) (courier carrying cash as part of a drug transaction that he did not negotiate did not have the "possessory interest requisite for standing to attack the forfeiture proceedings"); *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 498 (6th Cir. 1998) ("due to concerns about 'straw man' transfers, 'naked possession' claims are insufficient to establish standing.").

In his reply brief, defendant has come forward and clearly asserted an ownership interest in the $118,000 in cash seized from 105 Mederia Circle. (D.I. 326 at 15) Defendant claims that, based on the theory presented by plaintiff during his criminal trial, the money seized belonged to defendant and that Blake was holding it for him. (*Id.*) This assertion is supported by the record in two places. First, the affidavit submitted by Agent Miller to obtain a search warrant for 105 Mederia Circle attests that defendant was using Blake's residence in connection with his drug operation.[7] (D.I. 322, ex 2 at ¶ 15-17, ¶ 69-71, ¶ 88) Second, the DEA sent notices of forfeiture regarding the $118,000, addressed to defendant, to 30 Blue Spruce Drive, 105 Mederia Circle, and SCCF. (D.I.

---

[7]As part of the DEA's investigation into defendant, surveillance observed defendant, on May 28, 2003, drive to and from 105 Mederia Circle in connection with a suspected drug transaction. Surveillance believed that defendant "was obtaining cash from [an associate] and providing [that associate] with narcotics or potentially, the reverse." (D.I. 322, ex ¶ 15-17) Further surveillance on July 8, 2003 observed defendant enter 105 Mederia Circle. Defendant, shortly thereafter, was seen exiting Blake's residence carrying a white plastic shopping bag believed to contain a controlled substance. Upon leaving 105 Mederia Circle, defendant was observed meeting with an individual to whom defendant arguably delivered the controlled substance. (*Id.*, ex 2 at ¶ 69-71) Also, Agent Miller states in his affidavit that "[o]n August 11, 2003, DEA debriefed a past-proven reliable confidential source. The source advised that Huggins is still using Heather Blake's residence (105 Mederia Cir.) as a stash location for both narcotics and cash." (*Id.*, ex 2 ¶ 88) These events serve as the only references made to either 105 Mederia Circle or Blake in Agent Miller's affidavit.

323, exs. 74-79) Based on these facts, it is consistent with plaintiff's own theory of events that defendant "independently exercised some dominion or control" over the $118,000 in cash and Blake served as a "straw owner". As such, defendant has established a colorable ownership interest in the $118,000 in cash seized from Mederia Circle and, therefore, has meet the Article III standing requirement to challenge the administrative forfeiture of said monies.

Next plaintiff contends that defendant's motion cannot succeed because he is unable to fulfill the requirement imposed by § 983(e)(1)(B), which statute requires that a motion to set aside a forfeiture shall be granted only if "the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim." Plaintiff claims that defendant knew of the seizures on the day of his arrest. The record does indicate that defendant was in his residence at the time the search was conducted. (D.I. 327 at ¶ 5) Defendant admits to knowing that some of his possessions, including his automobiles, plasma television, sports jerseys, and DVDs, had been seized. (*Id.* at ¶¶ 11-12, ¶ 14) The record further shows that defendant, on the day of his arrest, was given and signed three DEA Form 12s listing the items seized from his residence. (D.I. 322, ex 5) Lastly while the record demonstrates defendant knew a search was being executed at 105 Mederia Circle, this court cannot adequately determine whether defendant knew what, if any, items were seized during that search.[8]

---

[8]There is no indication in the record that defendant was given a copy of the search warrant for 105 Mederia Circle. There is also nothing in the record indicating defendant was given a DEA Form 12 listing the items seized during the search. A copy of both the warrant and DEA Form 12 were left at 105 Mederia Circle, which was unoccupied at the time of the search. (D.I. 322, ex 2 at 2)

Defendant asserts that, while he did receive the DEA Form 12s, the forms do not qualify as proper notice of seizure for administrate forfeiture proceedings under 19 U.S.C. § 1607(a) or 18 U.S.C. § 983(a). (D.I. 326 at 3)  When defining "Notice of Seizure," as it relates to administrative forfeitures, 19 U.S.C. § 1607(a) states:

> [T]he appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

Defendant argues that DEA Form 12 does not include any information indicating that the property is subject to forfeiture, or what procedures an interested party must take to challenge an administrative forfeiture. As such, defendant contends that the knowledge he had of the seizure, on the day of his arrest, was insufficient on its own to satisfy the due process requirements of the Fifth Amendment. (D.I. 313 5-6; D.I. 326 2-3)

Neither plaintiff nor defendant cite any cases from within the Third Circuit addressing what constitutes adequate knowledge of seizure, in administrative forfeiture proceedings, to satisfy due process requirements.[9] The First Circuit, however, has in

---

[9]Plaintiff does cite three district court cases, from outside of the Third Circuit, to support its claim that defendant's knowledge of the seizures through observing part of the search and receiving DEA Form 12 was sufficient under § 983(e)(1)(B). Two of these authorities, however, can be distinguished from the facts at hand. In *Johnson v. United States*, 2004 WL 2538649 (S.D. Ind. 2004), the court held that an individual could not satisfy § 983(e)(1)(B) when he knew of the seizure and that the property was subject to forfeiture but did not know which governmental agency was holding the property. In *Upshaw v. United States Customs Service*, 153 F. Supp. 2d 46 (D. Mass. 2001), the court held that an individual who admitted seeing notices in a newspaper had adequate knowledge of seizure under §983(e)(1)(B) despite having not received personal written notice from the U.S. Customs Service. None of the cases cited by plaintiff ruled on the question of whether notice of seizure alone satisfied due process

part addressed this issue. The First Circuit concluded that the kind of "actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure." *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 38 (1st Cir. 2001). In *Volpe v. United States*, 543 F. Supp. 2d 113 (D. Mass. 2008), the court used this principle to conclude that knowledge of seizure alone, without any knowledge of pending forfeiture proceedings or procedures to challenge such proceedings, did not satisfy due process requirements. This line of reasoning is consistent with the United States Supreme Court's language in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). The *Mullane* Court, in reviewing adequacy of notice in terms of the Due Process Clause, stated that "'[t]he fundamental requisite of due process of law is the opportunity to be heard.' This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane*, 339 U.S. at 314 (quoting in part *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).

Applying these principles of due process to the facts at bar, the court finds that defendant's knowledge of seizure on the day of his arrest was not sufficient to afford him adequate due process. Defendant received no notice on the day of his arrest that administrative forfeiture proceedings would be commenced on his property.[10] In part,

---

requirements.

[10] The administrative forfeiture proceedings against defendant's property did not officially commence until October 21, 2003, approximately two months following the seizure. Between the time of the seizure and October 21, 2003, reports pertaining to each item of property were filed by the DEA field office and reviewed by DEA forfeiture attorneys to assess whether there were sufficient grounds to commence administrative forfeiture proceedings against the property. (*See* D.I. 323)

because the administrative forfeiture proceedings had not commenced, defendant did not receive any information on how to file a claim for the property or by when a claim for the property needed to be filed. As such, defendant was not, on the day of his arrest, adequately informed there was an administrative forfeiture proceeding against his property or informed of what the applicable procedures to be heard in the matter were. Therefore, defendant's knowledge of the seizures on the day of his arrest, as established by the record, failed to satisfy defendant's due process rights in this matter.

Finally, in support of its motion for summary judgment, plaintiff asserts that defendant motion cannot succeed because he is unable to meet the requirement imposed by §983(e)(1)(A).[11] Plaintiff argues that defendant, while at SCCF, received actual notice of the administrative forfeiture proceedings on or about October 27, 2003. (D.I. 321 20-21) To support this claim, plaintiff provides certified mail receipts signed by a prison employee and two declarations by prison officials. (D.I. 319, 320, 323) Defendant denies receiving any notices in 2003 or 2004. (D.I. 327 at ¶ 39) Defendant claims that he filed two grievances regarding the missing notices and that an investigation into the matter revealed that SCCF officials had no knowledge of what happened to the notices after the receipts were signed. (Id. at 25-37)

Plaintiff has the burden of proving that defendant received actual notice. While proof of actual notice would convincingly show that the government took reasonable steps to provide defendant with notice, a careful examination of the record leaves the

---

[11]§983(e)(1)(A) mandates that a motion to set aside an administrative forfeiture under §983(e) may only be granted if "the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice."

court unable to conclude, by a preponderance of the evidence, that defendant received actual notice in 2003. The record establishes that Jeff Mills, a prison employee at SCCF in 2003, signed for ten pieces of certified mail from the DEA addressed to defendant. (D.I. 323, exs. 41, 57, 68, 79, 95, 102, 109, 116, 127, 134) However, the declarations of Sergeant Lape and Warden Skradzinski, when balanced with defendant's declaration, do not establish what happened to the 2003 notices after the receipts were signed. Additionally, while it would be unreasonable to expect Sergeant Lape or Warden Skradzinski to remember the exact date the notices were delivered to defendant, nothing in the declarations clearly indicate in what year they remember the notices being delivered to defendant. As defendant points out in his reply brief, a second batch of forfeiture notices were mailed to defendant from his attorney in April of 2005. (D.I. 326 at 5) Due to the lack of Sergeant Lape's or Warden Skradzinski's reference to a year when referring to the delivery of the notices at issue, it is plausible that Sergeant Lape's and Warden Skradzinski's declarations are truthful and that they did not see or deliver any notices to defendant until April of 2005. Given that plaintiff relies entirely on these two declarations to establish proof of actual notice and does not provide any physical documentation, such as mail logbooks or receipts for mail signed by defendant, to corroborate the declarations, the court is left with the declarations of two prison officials versus the declaration of defendant. Plaintiff has not met its burden of showing that there is not a genuine issue of material fact with respect to whether defendant received actual notice at SCCF. As such, plaintiff's motion for summary judgment will not be granted on this basis.

13

However, it is well established that proof of actual receipt of notice is not required to satisfy due process under the Fifth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 170-71 (2002). The analysis for determining if due process standards are met is whether the government's effort to deliver the notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United States v. One Toshiba Color Television*, 213 F.3d 147, 149 (3d Cir. 2000) (quoting *Mullane*, 339 U.S. at 314). For individuals detained in the government's custody, due process requires that "notice of a pending administrative forfeiture must be mailed to the detainee at his or her place of confinement." *United States v. McGlory*, 202 F.3d 664, 674 (3d Cir. 2000). For incarcerated prisoners, the government's responsibility to deliver notices of forfeiture does not end when the notices are mailed to a correctional facility. *One Toshiba Color Television*, 213 F.3d at 150. Instead, in cases where the government is unable to establish actual notice, the government "bears the burden of demonstrating that procedures at the receiving facility were reasonably calculated to deliver the notice to the intended recipient."[12] *Id.* Rather than focusing on proof of actual notice, "the jurisprudence of constitutional notice appropriately focuses not on what actually

---

[12]Defendant argues that due process requires actual notice and cites *Weng v. United States*, 137 F.3d 709 (2d Cir. 1998) as support for this position. (D.I. 326 8-9) The Third Circuit reviewed the rule of requiring actual notice established in *Weng*, but has declined to adopt such a rule. *See One Toshiba Color Television*, 213 F.3d at 154-55. The Supreme Court has also reviewed and declined to adopt the rule established in *Weng* finding that such a standard exceeded due process requirements. Instead, The Supreme Court opted to follow a standard in line with the Third Circuit's standard from *One Toshiba Color Television* and its own previous rulings in *Mullane* and *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791 (1983). *See Dusenbery*, 534 U.S. 161, 169-71 (2002).

occurred, but rather on the procedures that were in place when notice was attempted." *Id.*

In the case at bar, the record indicates that the DEA relied, in good faith, on the reasonable procedures in place at SCCF. SCCF had a designated employee responsible for going to the post office and signing for certified mail addressed to prisoners. Each item that the DEA sent to defendant was marked certified and return receipt so the DEA received confirmation that the notices arrived at SCCF. (D.I. 323, exs. 41, 57, 68, 79, 95, 102, 109, 116, 127, 134) Defendant's own declaration states that he was told "all mail, meaning newspapers, magazines, etc., along with legal mail, is logged in the computer before it is passed out."[13] (D.I. 327 at ¶ 38) Based on the declarations of Sergeant Lape and Warden Skradzinski, designated prison officials had the responsibility of delivering mail and, in accordance with a chain of command system, would report back that they had done so. (D.I. 319, 320) These procedures are consistent with procedures that the Supreme Court has previously held to be

---

[13]This is consistent with the Bureau of Prison's policy statement concerning certified mail:

> Inmate certified mail shall be rated either as general correspondence (opened and inspected) or special mail (opened in the presence of inmate) as previously stated. If a "Return Receipt" has been attached, mail room staff shall sign the receipt, which shall be dispatched in the next regular mail. A log shall be maintained which the inmate shall be required to sign prior to delivery, thus completing the chain of receipts.

(Bureau of Prison Program Statement 5800.10.409A (1998))

15

"reasonably calculated," thus satisfying due process requirements. See *Dusenbery*, 534 U.S. at 169.[14]

While the mail procedures in place at SCCF may or may not have worked properly in this instance, when taking those procedures into account, combined with the DEA's mailing of notices to defendant at two other addresses and the publications placed in The Wall Street Journal for three consecutive weeks, the DEA took the necessary reasonable steps to provide defendant with notice and met its obligation under 19 U.S.C. §1607. Therefore, defendant is unable to meet the requirement imposed by §983(e)(1)(A). Accordingly, plaintiff's motion for summary judgement will be granted.

## V. CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment (D.I. 321) is granted. An appropriate order shall issue.

---

[14] In *Dusenbery*, the Court cited the following procedures:

The FBI sent certified mail addressed to petitioner at the correctional facility where he was incarcerated. At that facility, prison mailroom staff traveled to the city post office every day to obtain all the mail for the institution, including inmate mail. The staff signed for all certified mail before leaving the post office. Once the mail was transported back to the facility, certified mail was entered in a logbook maintained in the mailroom. A member of the inmate's Unit Team then signed for the certified mail to acknowledge its receipt before removing it from the mailroom, and either a Unit Team member or another staff member distributed the mail to the inmate during the institution's "mail call."

(Internal citations omitted)