# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

ANDRE M. HUGGINS,

    Movant/Defendant,

    v.

UNITED STATES OF AMERICA,

    Respondent/Plaintiff.

)
)
) Crim. No. 03-91-SLR
) Civ. No. 11-737-SLR
)
)
)
)

## MEMORANDUM OPINION

_____

Andre M. Huggins. Pro se movant.

Shannon Thee Hanson. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Counsel for respondent.

_____

September 24, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Andre M. Huggins ("movant") is a federal inmate currently confined at the Fairton Federal Correctional Institution in Fairton, New Jersey. Movant timely filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 358; D.I. 368) The government filed an answer in opposition. (D.I. 383) For the reasons discussed, the court will deny movant's § 2255 motion without holding an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

The case against movant arose out of a joint investigation conducted by the Internal Revenue Service ("IRS") and the Drug Enforcement Agency ("DEA"). Federal law enforcement officers became interested in movant while investigating a used car business named 1800 Motor Cars in Wilmington, Delaware. The IRS suspected that 1800 Motor Cars was accepting large payments of cash from drug dealers without reporting such transactions to the IRS, as required by federal law. Movant was a client of 1800 Motor Cars, and law enforcement officers believed he was dealing drugs as his primary source of income. As part of the investigation, law enforcement officers used a variety of techniques to investigate movant, including surveillance, wiretaps, and a pen register. The agents also conducted undercover operations, using a confidential informant to attempt to purchase drugs from movant.

---

[1]The court has summarized the pertinent facts from the various documents filed in this case and the Third Circuit's decision on direct appeal, *United States v. Huggins*, 392 F. App'x 50 (3d Cir. 2010).

The law enforcement officers sought and received authorization to search movant's home for evidence of drug trafficking. Movant agreed to speak with three law enforcement officers while his home was being searched, and he confessed that he was involved in distributing large amounts of cocaine with Jermaine Franklin, Ricardo Rogers, James Bestman, and Ricardo Barnaby. Movant was arrested that same day.

A third superseding indictment charged movant with seventeen counts. Count I charged that movant and Ricardo Rogers, a separately indicted co-conspirator, and others engaged in a conspiracy to distribute five kilograms or more of cocaine and distribute fifty grams or more of cocaine base between November 2001 and June 2002, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Counts II through XI charged movant and Rogers with distributing cocaine or cocaine base on specific dates between February 21, 2002 and June 4, 2002. Count XII charged that movant and Jermaine Franklin, a previously indicted co-conspirator, and others conspired to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Count XIII charged that movant and Franklin knowingly managed and controlled a building, room, and enclosure for the purpose of unlawfully storing and distributing cocaine, in violation of 21 U.S.C. §§ 856(a)(2), (b) and 18 U.S.C. § 2. Count XIV charged movant and Franklin with knowing possession of cocaine with the intent to distribute on May 28, 2003. Finally, Counts XV through XVII charged movant with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, premised on transactions involving a Cadillac Escalade on December 3, 2001, a GMC Denali on August 14, 2002, and the same GMC Denali on February 3, 2003.

2

At trial, the government presented the testimony of the three law enforcement officers who interviewed movant at his home and obtained his confession: Special Agent Greene of the IRS, Special Agent Miller of the DEA, and Task Officer Collins of the DEA Task Force. Ricardo Rogers, one of the individuals movant identified in his confession as involved in distributing drugs with him, also testified for the government at trial. Rogers testified that he sold cocaine and crack cocaine from November 2001 to June 2002, and that movant supplied him with cocaine in four and a half ounce quantities. During his testimony, Rogers stated he saw an individual named Melvin Barner at movant's store on February 19, 2002, and described how movant told him Barner was trying to buy drugs and asked if Rogers "could take care of hm." Rogers testified about that particular drug transaction with Barner, and also testified that he made subsequent sales of drugs to Barner and other individuals during the relevant time period.

Barner testified for the government during movant's trial, and explained that he worked as a paid confidential informant for the DEA in the spring and summer of 2002. Barner testified about the conversation he had with movant at his store on February 19, 2002 about buying cocaine, and how he obtained Rogers' name from movant and completed a drug deal with Rogers the next day. Barner also described seven subsequent drug transactions he had with Rogers in the spring and summer of 2002.

Jermaine Franklin testified at trial about his relationship with movant. Franklin described how movant offered him approximately $1000 per week to allow movant to use his apartment to stash drugs. After agreeing to this arrangement in April 2003, movant began bringing a bag to Franklin's apartment once a week and leaving it, and

3

that movant would retrieve items from his apartment more frequently than once a week. Franklin testified that he saw the contents of the bags and believed they contained kilograms of cocaine in a rectangular shape. Franklin testified that movant stopped dropping off drugs in July of 2003. Franklin also testified that he picked up drugs from someone named "Pop" from April to July 2003.

In addition to these witnesses, the jury heard tape recordings of calls between movant and Franklin, which Franklin identified as calls where movant would notify Franklin that he was coming to his apartment to pick up drugs.

Chris Malatesta, the sales manager at 1800 Motor Cars, testified that he sold five cars to movant and explained the falsified financing and titling arrangements. Movant's grandmother (Ruby Spielman) and father (Donald Jones) testified about their knowledge of the purchases.

On January 24, 2005, the jury convicted movant of counts II, XII, XIII, XIV, and XVII of the third superseding indictment. The jury was unable to reach a verdict on count I, and returned a verdict of not guilty on counts III-XI, and IV. Extensive post-trial motions followed, as well as litigation of the forfeiture allegations in the indictment. On November 4, 2005, movant moved for a new trial on the basis of allegedly newly discovered evidence. (D.I. 207) The evidence involved an affidavit purportedly authored by government witness Melvin Barner, wherein Barner recanted his trial testimony. The court denied the motion after conducting an evidentiary hearing and finding that the Barner affidavit had been falsified. (D.I. 259)

The court sentenced movant on August 21, 2006 to a term of twenty years of imprisonment and ten years of supervised release. (D.I. 276) The court also entered a

4

final order of forfeiture, subjecting movant to a personal money judgment and forfeiting his interest in a parcel of real property in Bear, Delaware. (D.I. 274) Movant appealed, and the Third Circuit Court of Appeals affirmed the conviction and sentence. *See United States v. Huggins*, 392 F. App'x 50 (3d Cir. 2010).

## III. DISCUSSION

Movant timely filed the instant pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, asserting the following eleven grounds for relief: (1) trial and appellate counsel provided ineffective assistance in numerous ways; (2) the government violated movant's due process rights by using false evidence to obtain a search warrant, arrest, indictment, and conviction; (3) movant's Fourth Amendment rights were violated because the warrant lacked probable cause and/or contained known perjury; (4) the government violated *Brady v. Maryland,* 373 U.S. 83 (1963), by withholding exculpatory material concerning co-conspirator Franklin; (5) the government violated movant's due process rights by obtaining personal property that was outside the scope of the search warrant and then by utilizing an administrative forfeiture procedure; (6) the government violated movant's due process rights by misleading the court into seeking a money judgment against him in order to forfeit movant's real property, and the money judgment violated the double jeopardy clause because movant suffered two punishments for the same offense; (7) the $292,000 money judgment was based on fraud and violated the double jeopardy clause; (8) the court has continuously violated movant's due process rights by basing its decisions on facts that he has proven to be false; (9) movant's convictions were obtained by prosecutorial and police misconduct; (10) movant has newly discovered evidence that

5

shows the government knowingly presented false evidence in violation of his due process rights; and (11) movant has newly discovered evidence from the IRS showing that he had a legitimate and lawful income for the years 1997 to 2003, contradicting the government's "unexplained wealth" theory it presented at his trial.

Movant's claims are overlapping and, at times, difficult to discern. Nevertheless, the court concludes that the claims should be denied for the reasons set forth below.

## A. Claim One: Ineffective Assistance of Trial and Appellate Counsel[2]

Movant asserts that trial counsel provided ineffective assistance by: (1) providing deficient advice about sentencing consequences; (2) failing to conduct an appropriate investigation; (3) making deficient strategic choices during the trial; (4) failing to file a timely motion for new trial; (5) failing to contest the administrative forfeiture; and (6) representing movant while operating under a conflict of interest. Movant also asserts that appellate counsel provided ineffective assistance on direct appeal by failing to file a complete appellate brief and file a petition for certiorari.

Movant has properly raised his ineffective assistance of counsel allegations in the instant § 2255 motion rather than on direct appeal,[3] and the court must review these

---

[2]Movant was represented by two privately retained attorneys during his criminal proceeding. Those attorneys withdrew from the case in July 2005, after movant was convicted. The court will refer to these attorneys as "trial counsel." Movant retained new counsel in the beginning of August 2005 (D.I. 185; D.I. 186), and this attorney represented movant through sentencing. The court will refer to movant's new counsel who represented him through sentencing as "trial counsel 2." (Movant does not assert any allegations of ineffective assistance with respect to trial counsel 2.) The Federal Public Defender's office represented movant on direct appeal. (D.I. 306) The court will refer to the attorney who represented movant on direct appeal as "appellate counsel."

[3]See United States v. Garth, 188 F.3d 99, 107 n.11 (3d Cir. 1999); United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996).

arguments pursuant to the two-pronged standard set forth in *Strickland v. Washington*,
466 U.S. 668 (1984). Under the first *Strickland* prong, movant must demonstrate that
"counsel's representation fell below an objective standard of reasonableness," with
reasonableness being judged under professional norms prevailing at the time counsel
rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong,
movant must demonstrate "there is a reasonable probability that, but for counsel's error
the result would have been different." *Id.* at 687-96. Additionally, in order to sustain an
ineffective assistance of counsel claim, movant must make concrete allegations of
actual prejudice and substantiate them or risk summary dismissal. *See Wells v.
Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92
(3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly
demanding and leads to a "strong presumption that the representation was
professionally reasonable." *Strickland*, 466 U.S. at 689.

## 1. Trial counsel provided deficient advice about sentencing consequences

Prior to the pre-trial motions hearing in August 2004, there were limited plea
discussions between the government and trial counsel. (D.I. 385-2 at 30) However, no
plea agreement was entered.

In September 2004, the government filed a notice pursuant to 21 U.S. § 851
stating that it intended to seek the available enhanced statutory penalties for any
violations of Title 21 of the United States Code. (D.I. 77) On October 12, 2003, the
grand jury returned a third superseding indictment. (D.I. 80) In January 2005, movant
was convicted of count XII of the indictment, which alleged a violation of 21 U.S.C.

7

§ 841(a)(1), (b)(1)(A), and § 846. By virtue of the government's § 851 notice and movant's prior felony drug conviction, movant was subject to a twenty-year mandatory minimum sentence, which the court imposed. (D.I. 272 at 45, 47, 68) Absent the enhanced mandatory minimum term, movant would have faced a mandatory term of ten years imprisonment and a guideline range of 188-232 months of imprisonment. (D.I. 272 at 47)

In this claim, movant contends that trial counsel never told him about the enhanced mandatory minimum sentence, and actually told movant that he faced only 120-151 months imprisonment if he proceeded to trial. According to movant, he would have pled guilty if he had been informed that he faced a mandatory minimum twenty year sentence.

Movant's instant allegation is unavailing. To begin, movant's assertion that counsel provided deficient sentencing advice is refuted by one of movant's defense counsel's document titled "declaration in response." (D.I. 385-2 at 29) One of movant's defense attorneys submitted a declaration explaining that he discussed with movant "all penalties associated with the crimes he was facing, including all mandatory minimums in effect after the government filed its Section 851 notice of intention to pursue enhanced statutory penalties. Nonetheless, [movant] insisted on going to trial." *Id.* Moreover, movant has not provided anything to support his contention that he believed he faced a maximum sentence of 151 months. Thus, the court concludes that movant has failed to establish that counsel's conduct fell below an objective standard of reasonableness.

In addition, the court finds movant's attempt to establish prejudice by asserting that he would have pled guilty if he had known that he faced a mandatory minimum twenty-year sentence if convicted at trial to be unavailing. "The plea bargain stage [is] a critical stage at which the right to effective assistance of counsel attaches." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). To demonstrate prejudice in this context, movant must establish the following three components: (1) a plea offer was extended by the government; (2) there was a reasonable probability that he would have accepted the plea offer and that the court would have approved the agreement; and (3) there was a reasonable probability he would have received a lesser sentence. *Id.* at 43-5, n.8. Notably, movant provides no evidence that the government extended a plea offer or would have entered a plea agreement offering a range of 120-151 months of imprisonment and/or a mandatory minimum sentence of ten years. In fact, the government's filing of the § 851 notice regarding its intent to seek enhanced statutory penalties demonstrates the strong likelihood that the government would not have entered a plea agreement providing for a lower sentence.

In turn, the government's July 30, 2004 letter to trial counsel indicates that the government would only have extended a plea offer if movant agreed to cooperate with the government. (D.I. 385-2 at 30) However, movant does not allege that he would have been willing to enter into a cooperation agreement with the government, and the government's letter actually indicates that movant was not interested in entering a cooperation agreement. Given these circumstances, the court cannot conclude that the government would have extended a plea offer.

9

Finally, movant fails to demonstrate a reasonable probability that he would have accepted a plea offer from the government, and the record actually refutes movant's contention that he would have accepted a guilty plea. As just discussed, the government's July 2004 letter to trial counsel indicates that movant would not have entered a plea agreement with the government because such an agreement would have required him to cooperate with the government, which he was not willing to do. In addition, movant's assertions during his litigation history belie movant's instant self-serving statement that he would have accepted a guilty plea to a term of imprisonment less than twenty years. *See United States v. Nigro*, 419 F.App'x 244, 248 (3d Cir. 2011 (rejecting similar claim on ground that record demonstrated the defendant was adamant that police lied and thus did not intend to plead regardless of sentencing consequences). Notably, during the entire life span of this case, movant has repeatedly and vociferously asserted: (1) his innocence; (2) that all of the government's witnesses committed perjury; (3) that various investigating law enforcement individuals committed perjury; (4) that the government agents lied about his confession to drug activity; and (5) that numerous witnesses and other evidence would have supported his claims of innocence and/or perjury. Given all of these circumstances, the court concludes that movant has not demonstrated he was prejudiced by any action of defense counsel in advising him as to the sentence he would face if he went to trial and was found guilty. Accordingly the court will deny this first allegation of ineffective assistance as meritless.

## 2. Trial counsel failed to conduct an appropriate investigation of evidence indicating government witnesses perjured themselves

At trial, Rogers testified that he was inside movant's store on February 19, 2009 when Barner came in and spoke with movant. In contrast, Barner testified that Rogers was on his way into movant's store as he was exiting it. Consistent with Barner's testimony, Agent Ramos-Diaz testified, and Agent Miller's notes confirmed, that Agent Ramos-Diaz saw Barner meet and speak with Rogers outside of movant's store. Movant asserts these inconsistencies demonstrate that Barner and Rogers lied about movant's role during the February 19, 2002 meeting. He further contends that trial counsel would have been able to prove that perjury and his innocence with respect to count II of the indictment if counsel had sufficiently investigated the contents of Tape N-15 (the recording taken from the wire Barner wore on February 19, 2002 that was not admitted as evidence during the trial), Agent Ramos-Diaz's testimony regarding the events of that day, and Agent Miller's notes regarding the events of that day.

The court is not persauded. Movant has repeatedly asserted to both this court and the Third Circuit his belief that Barner and Rogers committed perjury and his belief that Tape N-15 and/or the surveillance testimony would have revealed this perjury. Both courts, however, have concluded that the evidence admitted at trial, which included recorded phone conversations, co-conspirator testimony, and movant's confession admitting his involvement in the drug trafficking and money laundering activities for which he was convicted, as well as Tape N-15 (which was not admitted at trial), did not reveal perjury by government witnesses. *See e.g., Huggins*, 392 F. App'x at 51-55. For instance, movant first alleged that Barner committed perjury in his first

11

Rule 33 motion for new trial filed by counsel 2. To support that motion, movant submitted an affidavit purportedly authored by Barner in which Barner recanted the trial testimony he provided that supported count II of the indictment relating to the February 19, 2002 event. The affidavit stated that Barner lied at trial and that he followed a script prepared by the government attorneys and agents. (D.I. 259 at 4) Movant's Rule 33 motion also alleged that Tape N-15, which was not admitted as evidence at trial, demonstrated that the drug transaction occurred between Barner and Rogers exclusively and did not involve movant. After conducting an evidentiary hearing, the court determined that the Barner affidavit was a fraud. The court also found that Barner was credible and accepted his evidentiary hearing testimony that he had testified truthfully at trial. (D.I. 259 at 10). In addition, after listening to Tape N-15 "multiple times in tape and CD form," the court noted that "it remains difficult to discern the identities of the speakers, the contents of their conversations, or the location of same." (D.I. 259 at 11) The court concluded, "the tape, at best, is impeachment material and not of such a compelling nature to produce an acquittal." *Id.* at 12.

In August 2006, while representing himself, movant filed a second Rule 33 motion, this time alleging that a different government witness, Ricardo Rogers, had committed perjury along with Barner during the trial. Movant asserted that Barner and Rogers falsely testified about the alleged meeting with movant that occurred on February 19, 2002, and that their untruthfulness was proven by the recording known as Tape N-15, as well as by the surveillance testimony and notes of Special Agents Ramos-Diaz and Miller. The court denied this second Rule 33 motion as untimely during movant's August 21, 2006 sentencing hearing. (D.I. 272 at 3)

12

Although the court denied movant's second Rule 33 motion on procedural

grounds, the Third Circuit expressly rejected movant's assertion that the surveillance

testimony in any way demonstrated that Barner or Rogers testified falsely, stating:

[Movant] contends that Agent Ramos-Diaz's trial testimony and Agent Miller's
notes requires us to conclude that Rogers was not present in [movant's] store on
February 19, 2002. . . . We conclude to the contrary. . . . Although [movant] has
identified inconsistencies among the trial testimony of Rogers, Barner, and Agent
Ramos-Diaz with regard to whether Rogers was inside of [movant's] store while
[movant] was speaking with Barner, this does not establish that Rogers did not
enter the store and speak with [movant] about selling cocaine to Barner on
February 19, 2002.

Huggins, 392 F. App'x at 68 n.14.

In order to conclude that trial counsel failed to conduct an adequate investigation

of the evidence identified by movant, the court would have to accept movant's assertion

that the mere inconsistencies in the evidence he identifies proves perjury by Barner and

Rogers. The record, however, simply does not support that conclusion. "There are

many reasons testimony may be inconsistent; perjury is only one possible reason."

Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004). As found by the Third Circuit,

even if Rogers was outside movant's store when movant was speaking with Barner

inside his store, that situation does not prove that Rogers did not enter the store and

speak with movant about selling cocaine to Barner on February 19, 2002. "In fact, the

testimony of Barner and Agent Ramos-Diaz support an inference that Rogers was

headed into [movant's] store after speaking with Barner." Huggins, 392 F. App'x at 59

n. 6. Significantly, the "jury, as the finder of fact, was entitled to draw such an inference

or to credit the testimony of Rogers." Id.

13

When viewed in totality, the testimonial inconsistencies highlighted by movant do not conclusively show that Barner and Rogers perjured themselves. Additionally, because of its lack of clarity, Tape-N-15 does not conclusively show that Barner and Rogers perjured themselves. As such, movant cannot demonstrate that counsel's failure to "properly investigate" Tape N-15 and the testimony and notes provided by Agents Ramos-Diaz and Miller fell below an objective standard of reasonableness, or that he was prejudiced by counsel's failure to uncover perjury that simply did not exist. Thus, the court will deny this allegation as meritless.

### 3. Trial counsel utilized deficient trial strategies

Movant asserts numerous examples of trial counsel's alleged deficient trial tactics and/or strategies. As a general rule, the strategic choices of counsel are afforded a strong presumption of correctness and deference. *See United States v. Martin*, 262 F. App'x 392, 397 (3d Cir. 2008) With this principle in mind, the court will address movant's specific assertions of error in seriatim.

### (a) Ineffectively impeached trial witnesses

### (1) Barner and Rogers

Movant asserts that trial counsel should have recalled Barner and Rogers to the stand after Special Agent Ramos-Diaz testified in order to impeach them with Ramos-Diaz's allegedly conflicting testimony. During movant's direct appeal, the Third Circuit found that Ramos-Diaz's testimony was consistent with Barner's testimony and also that it did not conflict with Rogers' testimony. *See Huggins*, 2010 WL 3213828, at \*8 n.6. Based on that finding, the court concludes that trial counsel's failure to attempt to

impeach Barner and Rogers with Ramos-Diaz's non-conflicting testimony did not
amount to ineffective assistance.

Movant relatedly asserts that counsel failed to impeach Barner and Rogers with
Tape N-15 and Agent Miller's handwritten notes. As previously noted, the court
reviewed Tape N-15 and concluded that the identities of the speakers, the contents of
their conversations, and the location of those conversations were "difficult to discern."
(D.I. 259 at 11) Consequently, the court finds that trial counsel's decision not to use
Tape N-15 while cross-examining Barner and Rogers did not fall below an objective
standard of reasonableness. Additionally, although the Third Circuit did not review the
merits of this claim when movant presented it on direct appeal, the Third Circuit stated,

> [movant's] trial counsel may well have made a strategic choice not to use the
> N15 CD and Agent Ramos's testimony to impeach Barner. It is far from clear
> that this evidence could have been effectively used to impeach Barner and
> several other approaches were available to trial counsel. In fact, trial counsel
> attacked Barner's credibility on several other grounds – questioning him about
> his engagement in criminal activity while he was working as a confidential
> informant for the government and his history of violating court orders and lying to
> law enforcement officers. Counsel also questioned Barner about his plea
> agreement with the government.

*Huggins*, 392 F. App'x at 68. The Third Circuit's description of trial counsel's thorough
efforts to impeach Barner defeats movant's instant contention that trial counsel's
performance in this respect was ineffective.

Finally, movant has failed to demonstrate prejudice resulting from trial counsel's
actions. Agent Ramos-Diaz testified at trial about his surveillance on February 19,
2002. Trial counsel used Agent Miller's notes about the events of that date when cross-
examining Agent Ramos-Diaz. As a result, the jury was aware of any conflicting
testimony, and recalling Barner or Rogers would have added little to the defense.

Moreover, given counsel's extensive cross-examination of Barner and Rogers and overall attempts to impeach their credibility, the court cannot conclude that movant has demonstrated a reasonable probability that the outcome of movant's trial would have been different but for trial counsel's failure to use Agent Miller's notes, Agent Ramos-Diaz's testimony, or Tape N-15 to impeach Barner and Rogers. Accordingly, the court will deny this particular allegation as meritless.

### (2) Agent Miller and Task Force Officer Collins

Next, movant asserts that trial counsel "failed to impeach and destroy" the credibility of Special Agent Miller and Task Force Officer Collins with respect to the drug transaction that occurred on February 19, 2002. Movant contends that trial counsel were ineffective for failing to ask these officers any questions about their involvement in the surveillance of the events of February 19, 2002, and asserts that cross-examination would have revealed that they suborned the allegedly perjured testimony of Rogers and Barner. This argument is unavailing. As previously explained, trial counsel used Agent Miller's notes during the cross-examination of Agent Ramos-Diaz, and the Third Circuit found that inconsistencies in the trial testimony of Rogers and Barner about the February 19, 2002 incident did not establish that Rogers did not enter the store and speak with movant about selling cocaine to Barner. As such, movant cannot demonstrate that he was prejudiced by counsel's actions.

### (3) Jermaine Franklin

During movant's trial, Franklin testified about his role in storing cocaine and cash in his apartment for movant in 2003, and that that he picked up drugs for movant on occasion from an individual known as "Pop." Franklin also testified that, although he

16

could see bricks of cocaine inside the bags movant brought to his apartment, he was unsure about the number of bricks in the bag on each occasion. On cross-examination, counsel asked Franklin how many times he had picked up drugs from Pop. Franklin responded that he did not know, and that the DEA agents who interviewed him "told me to guess, so I threw a number in." (D.I. 134 at 40-41) On further cross-examination, Franklin testified that the agents "told me to guess everything . . . Everything I told them I didn't know, so they told me, well, guess." *Id.* Franklin also indicated on cross-examination that he "just threw numbers out" regarding the quantities of cocaine and money involved. *Id.*

Here, movant contends that trial counsel should have impeached Franklin's credibility by using Franklin's "guessing" testimony. Movant asserts that counsel failed to make the point "absolutely clear to the jury" that Franklin had in actuality testified falsely, and trial counsel's failure to question Franklin further did not "destroy" Franklin's credibility. The record belies movant's contentions about trial counsel's allegedly ineffective performance. On cross-examination, trial counsel directly challenged Franklin's testimony and elicited Franklin's statements about his "guesswork." As such, trial counsel's cross-examination did, in fact, undermine Franklin's credibility, and was the type of cross-examination movant contends did not occur. In addition, although Franklin's testimony about the drug quantities was inconclusive, nothing in the record provides support for movant's contention that Franklin testified falsely about storing the cocaine and picking up deliveries of cocaine for movant.

Movant also asserts that counsel should have called as a witness Special Agent Mark McHugh, the investigator who supposedly told Franklin "to guess." Considering

that Franklin himself testified that he was told to guess as to the drug quantities, Special Agent McHugh's testimony on this point would have been cumulative. As such, any alleged deficiency with respect to such testimony cannot satisfy the *Strickland* prejudice standard. *See Clark v. Ricci*, 285 F. App'x 933, 936 (3d Cir. 2008).

### (b) Failed to object to testimony

Movant asserts that counsel provided ineffective assistance by failing to object to the admission of Rogers' and Franklin's testimony, as well as to the admission of testimony about movant's confession. These contentions are unpersuasive, because counsel had no basis under the Federal Rules of Evidence for objecting to this testimony. *See United States v. Nguyen*, 379 F. App'x 177, 181 (3d Cir. 2010). For instance, movant contends that counsel should have moved to strike Rogers' testimony regarding the February 19, 2002 incident in movant's store on the ground that it was proven to be false by Agent Ramos-Diaz's testimony and Agent Miller's handwritten notes. However, considering that the Third Circuit rejected movant's argument that the Ramos-Diaz/Miller evidence demonstrated that Rogers testified falsely, movant cannot establish a reasonable probability that an objection on this basis would have been successful. Moreover, because Rogers was a witness involved in the events of February 19, 2002, there was an adequate foundation for his testimony under Federal Rules of Evidence 601 and 602, and the testimony was relevant under Rules 401 and 402. Finally, any other evidence that cast doubt on Rogers' credibility would have affected the weight of the evidence rather than its admissibility.

Movant also contends that counsel should have objected to Franklin's testimony on the basis that Franklin did not have "any personal knowledge or observation" about

the contents of the bags of cocaine because he answered all the questions about the bags of cocaine stored in his apartment with "I don't know, I never looked in the bag." Movant's contention is unavailing. Pursuant to Federal Rule of Evidence Rule 602, a witness can only testify to issues about which he/she has personal knowledge. Here, although Franklin testified that he never personally opened the bags outside of movant's presence, Franklin unequivocally testified that he saw bricks of cocaine in the bags when movant opened the bags in his apartment – he just did not know the actual number of bricks that were in the bags. Given this record, counsel had no factual basis for objecting to Franklin's testimony as lacking personal knowledge.

Next, movant asserts that counsel should have objected to the admission of testimony about his confession offered by three investigating agents: DEA Special Agent Miller, DEA Task Force Officer Collins, and IRS-CI Special Agent Greene. Movant asserts that the testimony was inadmissible because there was no documentary evidence supporting the Agents' testimony that movant confessed. This argument is to no effect. Contrary to movant's assertion, the Federal Rules of Evidence do not require tangible evidence corroborating a confession in order for a witness to testify about that confession. Each of the three witnesses testified that he was present during movant's multi-hour, *Mirandized* interview, and each witness described what he personally heard. The absence of other documentary corroboration goes to the weight of the evidence, and trial counsel vigorously cross-examined Agents Collins and Miller about movant's confession. (D.I. 385 at 139-140, 159-171) Moreover, because each witness had personal knowledge of the interview, the testimony was relevant and had an adequate foundation. *See* Fed. R. Evid. 401, 402, 601, 602. Thus, counsel did not provide

19

ineffective assistance by failing to raise a meritless objection about the absence of documentary evidence of movant's confession.

### (c) Failed to investigate and call witnesses

Movant contends that counsel should have interviewed and subpoenaed fifteen individuals because their testimony would have been pertinent to his defense. The court summarily rejects movant's contention that the following six individuals should have been subpoenaed and interviewed, because all six witnesses testified at trial and were subject to cross-examination: Special Agent Ramos-Diaz; Special Agent Miller; Task Force Officer Collins; Donald Jones (movant's father); Ruby Spielman (movant's grandmother); and Jermaine Franklin. As such, there was no error or prejudice with respect to counsel's "failure" to interview or call these individuals.

As for movant's assertions regarding counsels' failure to investigate and subpoena the remaining nine individuals, courts generally presume that attorneys acted strategically in deciding not to call certain witnesses, and the defendant bears the burden of rebutting that presumption. See Thomas v. Varner, 428 F.3d 490, 499-500 (3d Cir. 2005). An otherwise reasonable decision by counsel not to call certain witnesses is not ineffective simply because it differed from the defendant's wishes. See, e.g., Diggs v. Owens, 833 F.2d 439, 445-46 (3d Cir. 1987). With this principle in mind, the court will review movant's assertions.

### (1) Special Agent McHugh

Movant contends that counsel should have interviewed Special Agent McHugh to provide a "recap" of Agent McHugh's interview of Franklin and describe what went on at Franklin's residence on August 26, 2003. Notably, movant does not identify what, if

20

any, different or additional relevant information would have been provided by Agent McHugh had he been interviewed or had he testified. Considering that Franklin himself testified and was cross-examined about his interview with Agent McHugh, Agent McHugh's testimony on this issue would have been cumulative. As such, movant cannot demonstrate that he was prejudiced by counsels' failure to interview Agent McHugh.

## (2) Ralph Perez

As established by trial testimony, Perez was standing outside movant's store with movant on February 19, 2002, the day on which Barner arrived at movant's store to discuss selling drugs with movant. In the instant claim, movant asserts counsel was ineffective for not calling Perez to testify, because Perez would have testified that Rogers was not present in the store in that date. Movant also asserts that Perez would have verified that Barner and movant never discussed the sale of 4.5 ounces of cocaine on February 19, 2002.

As an initial matter, movant does not provide an affidavit from Perez stating that he would have been available to testify and/or describing his potential testimony. Nor does movant provide any other support for his assertion that Perez would have been available to testify and would have testified in the manner he describes. As such, movant's description of Perez's potential testimony amounts to speculation. Given these circumstances, the court cannot conclude that counsel's failure to interview or call Perez as a witness was objectively unreasonable.[4]

---

[4]In addition, trial counsel knew about testimony Perez provided before the grand jury that, if subject to cross-examination, would have created a greater risk of prejudicing

21

Movant also cannot demonstrate that he was prejudiced by counsel's decision

not to interview Perez or call Perez as a witness. As previously discussed, the record

shows that there were some disparities between the testimony provided by Rogers,

Barner, and Agent Ramos-Diaz regarding Rogers' presence in movant's store while

movant was arranging a drug deal with Barner. However, on direct appeal, the Third

Circuit determined that these inconsistencies did "not establish that Rogers did not enter

the store and speak with movant about selling cocaine to Barner on February 19, 2002."

See Huggins, 392 F. App'x at 59 n.6. Thus, even if Perez would have testified that

movant was not in the store on the relevant date, that testimony would have been

cumulative of the same inconsistency that the Third Circuit determined to be irrelevant.

For all of these reasons, movant's speculative statement regarding the benefit of

Perez's testimony fails to overcome the strong presumption that trial counsel's decision

not to call Perez as a witness amounted to sound trial strategy.

## (3) Ricardo Barnaby and Joseph Smithers

At trial, federal law enforcement officers testified that movant confessed in

August 2003 to his involvement in the sale of illegal narcotics. During his confession,

movant stated he had acquired up to ten kilograms of cocaine at any one time from

Ricardo Barnaby (aka "Man Pop" or "Pop") during the period from February to August

2003. Movant's confession corroborated Jermaine Franklin's testimony that movant

would direct him to pick up cocaine from Barnaby. Franklin described how he would

travel to Barnaby's residence in Newark, Delaware, and Barnaby would give Franklin a

movant's defense than the potential benefit of adding to the existing impeachment of
Rogers and Barner. (D.I. 384)

bag containing the cocaine. Franklin would transport the bag to his apartment, and then contact movant to confirm the delivery. Wiretap and surveillance evidence admitted at trial confirmed this arrangement.

Here, movant contends that counsel should have called Barnaby as a witness because he would have testified that none of the above information regarding movant's acquisition of cocaine from him was true. Once again, however, because movant does not provide an affidavit from Barnaby confirming that he would have testified in this manner, movant's assertion constitutes mere speculation. Moreover, when viewed in context with the fact that Barnaby was an alleged supplier of multiple kilograms of cocaine, there was a strong likelihood that Barnaby's testimony would have been more harmful than beneficial to movant's case. In short, movant's speculation about what Barnaby may or may not have testified to cannot overcome the strong presumption that counsel's strategic decision not to call an alleged drug supplier to issue a blanket denial about movant's involvement was reasonable and did not prejudice movant.

Movant also contends that counsel should have called Joseph Smithers as a witness at trial to rebut expert testimony that movant used code language to speak with his customers to negotiate the quantities of various drug deals. This code language was demonstrated at trial via the following conversation between Smithers and movant, and included such phrases as "plate/half a plate" and "four courses/eight courses" to refer to kilogram/half-kilogram quantities of cocaine.

> Movant: Like before?
>
> Smithers: Yeah, but don't you remember, when I was fronted that whole plate, right?

Movant: Yeah.

Smithers: I'm only trying to eat half a plate, though, you know what I'm saying?

Movant: Oh, instead of eight courses you only want four courses?

Smithers: Huh?

Movant: You only want four courses instead of eight?

Smithers: Right, right, right, right . . . Based on how much I ate, you what I'm saying, last time and it took me, you know what I'm saying?

(D.I. 385-2 at 1-2) According to movant, Smithers would have denied that "half a plate" referred to quantities of cocaine if he had been called to testify.

This contention fails to establish that counsel provided ineffective assistance. The court acknowledges that movant filed a notarized statement allegedly signed by Smithers[5] (D.I. 207-1 at 9) as an exhibit to his Rule 33 motion for new trial (D.I. 207) wherein Smithers states that the "conversation played on the internet between [movant] and myself talking about – half a plate and a whole plate – half way up the block and all the way up the block – are in no way setting up or discussing cocaine deals or cocaine [].”[6] (D.I. 207-1 at 9) However, Smithers' "affidavit" is dated April 25, 2005 and does not indicate whether Smithers would have been willing or available to testify in this manner during movant's trial in January 2005. In turn, neither Smithers' "affidavit" nor movant's § 2255 motion provides an alternate meaning for these allegedly innocent

_____

[5]The court uses the term "allegedly" because the signature is illegible.

[6]The court is discussing Smithers' "affidavit" because movant refers to the "affidavit" in his reply to the government's answer. (D.I. 389 at 35)

phrases. As such, the court concludes that movant's speculative contention fails to satisfy either prong of the *Strickland* standard

## (4) Jimmy Chan, Frank Acierno, Jr., and Linda Hancock

Movant's money laundering convictions stemmed from two separate transactions involving movant's concealment of drug proceeds through his acquisition of a 2001 GMC Denali from a business called 1800 Motorcars and, specifically, a salesman named Christoper Malatesta. On or about August 15, 2002, movant and Malatesta completed the sale of the Denali. (D.I. 383 at 24) Malatesta, who had already pled guilty to a money laundering charge by the time of movant's trial, testified during movant's trial and provided the following financial details about the transactions.

Movant approached Malatesta and told him that he "had some cash that he needed cleaned up." *Id.* Consequently, movant purchased a Denali from 1800 Motorcars in the name of his grandmother, Ruby Spielman, and the paperwork for the deal fraudulently concealed the amount of cash that movant paid for the car. (D.I. 385 at 93-104) In order to complete the transaction, movant and Malatesta obtained an $18,000 car loan in Ms. Spielman's name, but Ms. Speilman was completely unaware of this transaction. A few weeks later, Ms. Spielman began complaining to the bank upon learning about the new loan. Malatesta told movant that he needed to pay off the loan, and movant provided $18,000 to Malatesta. During his testimony, Malatesta identified Jimmy Chan as another salesperson at 1800 Motor Cars, and Frank Acierno, Jr. as the owner of the business. Malatesta testified that he "put [the money] in [his] drawer and then gave it to Frank or Jimmy." (D.I. 385 at 103) Documents from the bank

25

demonstrate that the loan was paid off in full within nine days after it was initiated. (D.I. 385 at 104-06)

In the instant claim, movant contends that trial counsel should have called Chan to testify because he would have contradicted Malatesta's testimony about the money laundering transactions. Once again, however, movant fails to support this contention with an affidavit from Chan. Moreover, considering that Chan had already pled guilty in May 2004 to conspiracy to commit money laundering, money laundering, and obstruction of justice, movant cannot overcome the strong presumption that trial counsel's decision not to call Chan to testify was strategically reasonable. Significantly, Chan was charged with, and pled guilty to, conspiring with Malatesta to do the same type of fraudulent automobile transactions that were at issue in movant's case. In fact, one of the overt acts charged against Chan involved the sale of a Cadillac Escalade to movant. Additionally, the trial evidence included movant's express admission in his confession that all of his large-dollar purchases, including his automobiles, were made using drug proceeds. (D.I. 383 at 25) Consequently, even if Chan had been called to testify, his potential testimony would have had little credibility.

Movant also asserts that Acierno should have been called as a witness because he would have contradicted Malatesta by verifying that movant still owed over $18,000 on the Denali purchase. However, as just explained, the testimonial evidence presented at trial belies this assertion, and documents from the bank demonstrate that the loan was paid off in full within nine days after it was initiated. (D.I. 385 at 104-06) Thus, counsel cannot be ineffective for failing to call Acierno to testify to a situation that just was not true and was easily disproved by verified bank documents. In addition,

even if Acierno had testified in the manner set forth by movant, his testimony would not have changed that fact that the automobile transaction was accomplished using a false name and false paperwork in order to conceal the actual owner of the vehicle and the amount of cash provided.

Finally, movant contends that counsel should have called a woman named Linda Hancock to testify at trial. Ms. Hancock was the loan officer for movant's purchase of his home. Supposedly, in 2001, Ms. Hancock informed movant that he could not get any new credit because of his bad debt-to-income ratio and that, therefore, he needed to reduce his credit. Movant contends that he put the Denali paperwork and loan in his grandmother Spielman's name in order to achieve a better debt-to-credit ratio and help him obtain a house loan. According to movant, if counsel had called Ms. Hancock as a witness, she would have testified that she advised movant to reduce his credit. In essence, movant asserts that Ms. Hancock's testimony would have demonstrated that he only put the Denali paperwork in his grandmother's name in order to help him obtain a house loan, and that his fraudulent actions were not part of a money laundering scheme.

Movant's contention is unavailing. Even if the court were to accept as correct movant's speculation regarding Ms. Hancock's potential testimony, that testimony had no relevance to evidence that was introduced with respect to the financing transaction involving the Denali in 2002 and 2003. Movant's grandmother, Ruby Spielman, clearly and explicitly testified at trial that, while she knowingly helped movant obtain financing for an Escalade he bought, she had absolutely no knowledge about an auto loan taken out in her name to finance the purchase of the Denali. (D.I. 135 at 112-128) Notably,

27

Ms. Spielman did not testify that she allowed the Denali loan to be obtained in her name because movant had bad credit. Given these circumstances, Ms. Hancock's testimony about movant's bad credit would have had little relevance to the testimony and evidence regarding the Denali purchase. Thus, movant's contention about counsel's failure to call Ms. Hancock as a witness does not satisfy either prong of the *Strickland* standard.

## (5) Movant's probation officers

Movant also asserts that counsel was ineffective for failing to interview and/or call his two probation officers to testify at trial. Movant states that the officers would have testified that movant brought in income verifications during the years 1996-2003 which, in turn, would have undermined the government's unexplained wealth theory.

First, any of movant's out-court-statements to his probation officers verifying his income would not have been admissible for the truth of the matter if offered by movant himself. *See* Fed. R. Evid. 801. Second, having movant's probation officers testify would have emphasized to the jury that movant was previously convicted of a crime warranting a seven year parole term. As a result, it is very likely that trial counsel strategically weighed the pros and cons of calling movant's probation officers as witnesses, and decided that the possibility of prejudice outweighed any benefit. Considering that the evidence at trial established that movant did not file income tax returns during the years in question except the $5,465 reported in 2001, and that the government only presented a limited theory of unexplained wealth, the probative value of the probation officers' testimony was doubtful. Accordingly, the court concludes that counsel's failure to call movant's probation officers did not amount to ineffective assistance.

28

### (d) Failed to use Tape N-15 at trial

Tape N-15 was a recording taken from a wire worn by Barner on February 19, 2002. The government presented Tape N-15 to the defense during discovery, but neither party elected to use the tape during the trial. Here, movant asserts that trial counsel should have used Tape N-15 "to impeach and expose" the perjury committed by the government's witnesses. This claim is unpersuasive. First, because the court has already rejected the factual premise of this argument – that Tape N-15 provides any clarity with respect to the events surrounding February 19, 2002 – movant cannot establish that he was prejudiced by counsel's failure to use a tape that had little, if any, evidentiary value. Moreover, as already discussed, counsel extensively impeached Barner and Rogers, and also questioned Barner about his criminal activity while working as an informant. Accordingly, the court will deny this argument as meritless.

### (e) Failed to rebut the money laundering case

The government's evidence on the money laundering counts of conviction concerned two separate transactions involving movant's concealment of drug proceeds through his acquisition of a 2001 GMC Denali. To reiterate, movant originally acquired the Denali in August 2002 through the use of a fraudulent bill of sale that concealed the amount of cash paid for the car. The car was falsely titled in the name of movant's grandmother, Ruby Spielman, and a bank loan for a portion of the price ($18,000) was also executed in Spielman's name. Once purchased, movant arranged to have a second set of fictitious sale documents created on February 3, 2003, which enabled movant to have the Denali titled in the name of his father, Donald Jones.

29

According to movant, counsel was ineffective for failing to mount a defense to these transactions. Movant asserts that counsel should have provided evidence showing that the car was titled first in Ms. Spielman's and then in Mr. Jones' name because the cost of insurance was too high for movant, and also because he had bad credit and needed to avoid taking on new loans as he simultaneously attempted to purchase a home. The court rejects the specious contention. Trial counsel thoroughly cross-examined both Ms. Spielman and Mr. Jones in an attempt to establish both the bad credit and insurance theories. Although Mr. Jones' testimony advanced this theory in a limited manner, Ms. Spielman explicitly testified that she was completely unaware that the Denali had been purchased in her name. Upon hearing this statement from Ms. Spielman, it would have been reasonable for counsel to have decided not to pursue the credit/insurance theory because it would not withstand Ms. Spielman's own testimony. Viewed in this context, counsel made the strategically sound decision to aggressively impeach Christopher Malatesta, the person who provided testimony demonstrating movant's mens rea for the money laundering charges.

Moreover, given Ms. Spielman's testimony that she did not know the Denali had been purchased in her name, movant cannot demonstrate that he was prejudiced by counsel's failure to pursue this theory. Accordingly, the court will deny this allegation for failing to satisfy either prong of the *Strickland* standard.

### (f) Failed to object to unexplained wealth theory

IRS Special Agent Raymond Greene testified at trial about the "unexplained wealth" analysis that he conducted on movant, which compared movant's estimated expenditures from 2000-2003 with his reported income. Agent Greene testified that

movant did not file federal income tax returns for the years 1999-2000 and 2002-2003, and that movant filed a tax return for the year 2001 claiming a total net income of only $5,465. Agent Greene explained that he used this figure for purposes of his analysis, but trial counsel objected before Agent Greene could testify about his conclusions from his analysis. Following a lengthy colloquy with counsel for both parties and voir dire of Agent Greene outside the jury's presence, the court sustained the objection.

In the instant allegation, movant asserts that trial counsel should have objected to the government's unexplained wealth theory based on his failure to file income tax returns. Movant contends that trial counsel should have explained that his failure to file income tax returns did not necessarily mean that movant did not have a legitimate source of income.

The court is not persuaded by this argument. Trial counsel objected to Agent Greene's analysis before it was presented to the jury, and that objection was sustained. In turn, while cross-examining Agent Greene, trial counsel explored the possible innocent explanations for movant's failure to file tax returns. Trial counsel also thoroughly cross-examined Agent Greene about the basis for his expenditure analysis. In short, movant's argument cannot satisfy either prong of the *Strickland* standard, because trial counsel actually put forth the arguments/objections movant contends were never made.

### (g) Failed to allow movant to testify in his own defense

Movant contends that counsel erred by not permitting him to testify in his own defense at trial. Movant asserts that he told trial counsel toward the close of the government's case that he wanted to testify, but trial counsel refused that request. This

31

assertion is belied by the record, which includes movant's personal statement to the

court at the close of the case that it was his desire not to testify:

COUNSEL: And lastly, Your Honor, let the record reflect that [co-counsel] had an extensive conversation, and I had a conversation with [movant] as well. And we informed him of his constitutional right to testify or to remain silent. We informed him that it's his right and his decision alone and no one can make that decision for him.

And also, Your Honor, he's aware that he can have an instruction given by the court, that the fact that he remains silent, the jury cannot take that as an inference, an adverse inference, as to his guilt.

After having that discussion and we've been having discussion with him for some time regarding whether or not he should testify and he knows my strategic position on that and he had a conversation my [co-counsel] as well, it his desire not to testify in this case.

Is that correct, sir?

MOVANT: Yes.

COURT: All right.

(D.I. 385-1 at 178-79) Given movant's admission before the court that the decision not

to testify was his, the court will deny the instant allegation as meritless.

## 4. Trial counsel failed to file a timely motion for new trial

After the jury verdict, trial counsel filed a Rule 29(c) motion for judgment of

acquittal, alleging that the evidence presented by the government was insufficient to

support a finding of guilt on any of the counts of conviction. (D.I. 131) Thereafter,

movant filed two pro se letter memoranda in support of the Rule 29(c) motion. (D.I. 173;

D.I. 173) The court denied the Rule 29(c) motion in July 2005. (D.I. 179) In its

memorandum opinion denying the motion, the court noted that it had considered both

32

the counseled and pro se pleadings in reaching this decision (D.I. 179 at 1 n.3), and

further explained:

As noted, [movant] challenges the crux of the investigation, witnesses and
prosecution as deceitful, corrupt and without merit. Although [movant]
meticulously details every perceived injustice, his claims can essentially be
reduced to attacks on the credibility of the witnesses who testified against him.
The court's role on review under Fed. R. Crim. P. 29, however, is to refrain from
second guessing the credibility determinations made by the jury. [] A court's
finding of insufficiency should be limited to cases where the prosecution's failure
is clear.

(D.I. 179 at 15)(internal case citations omitted)

In August 2005, movant retained a new attorney to represent him ("trial counsel

2"). In November 2005, trial counsel 2 filed a Rule 33 motion seeking a new trial on all

counts based on alleged newly discovered evidence, claiming that witness Melvin

Barner had committed perjury when testifying in support of count II during movant's trial.

(D.I. 207) The newly discovered evidence included an affidavit purportedly authored by

Barner admitting his perjury, as well as Tape N-15, which movant contended supported

the allegation of perjury. The court denied the Rule 33 motion after finding that Barner

had testified truthfully and that the alleged "affidavit" indicating otherwise was

fraudulent, and also that Tape N-15 lacked clarity. (D.I. 259)

In the instant claim, movant contends that, after the verdict, he instructed trial

counsel to file both a Rule 33 motion for new trial and a Rule 29 motion for judgment of

acquittal, and that counsel agreed to do so. However, trial counsel only filed a Rule 29

motion for judgment of acquittal. Movant asserts that trial counsel's failure to file a Rule

33 motion within seven days of the jury verdict constituted ineffective assistance,

because filing such a motion would have "allowed the court to review the [government's

33

solely circumstantial] evidence under a different standard, and would have allowed the

court to make credibility determinations." (D.I. 368 at 27) More specifically, movant

contends:

> In light of the record and evidence [movant] has presented, and weighing the evidence most favorable to [movant], the court would have been justified in granting [movant] a new trial in the interest of justice. The court has never ruled on Rogers' false testimony and the facts that show he was not inside the store before, during, or after Barner left.

> Ramos' testimony and Miller's notes has Rogers meeting and talking to Barner when Barner got up to 6th street, after Barner left the store. [Tape] N-15 captured their conversation, and proves that [movant] did not have a drug conversation with Barner, and Rogers did.

> Given the totality of this evidence most favorable to defendant, there is a reasonable probability that this court would have found that prosecution witnesses, including police officers, not to be credible when reviewing the trial record in response to a Rule 33 motion filed within 7 days.

> \* \* \*

> Had counsel filed the Rule 33 motion within seven days it would have allowed the court to weigh Franklin's testimony in light [of] the discovery that everything he told the police during his interview, he did not know, and he told them he did not know, and the agents, in turn, told Franklin to guess and throw numbers out at everything.

> This, with the magnification that police officers told Franklin to guess and throw numbers out to falsely accuse [movant] in a felony drug conspiracy, obstructing justice, and suborning false testimony, surely would have given the court ample reason, and a reasonable probability to grant [movant] a new trial in the interest of justice.

(D.I. 389 at 41-42) The court liberally construes this allegation as asserting that trial

counsel erred by failing to file a Rule 33 motion challenging the guilty verdict as against

the weight of the evidence.

Admittedly, a Rule 33 motion not predicated on "newly discovered evidence"

permits a defendant to seek a new trial on the ground that the verdict was contrary to

the weight of the evidence. *See United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the government, but instead exercises its own judgment in assessing the government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Nevertheless, a new trial is only warranted when the errors, "combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Hoffecker*, 530 F.3d 137, 168 (3d Cir. 2008). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *Johnson*, 302 F.3d at 150 (internal citations omitted).

Movant's instant argument about trial counsel's failure to file a Rule 33 motion for new trial within seven days of the jury verdict is unavailing, because he fails to demonstrate a reasonable probability that a new trial would have been granted. Notably, the court's numerous other rulings involving the same issues of perjury demonstrate that the court repeatedly found both the investigating agents and the cooperating witnesses credible. For instance, when it denied movant's Rule 33 motion filed by counsel 2, the court found that Barner was credible and had testified truthfully. When deciding certain forfeiture issues post-trial, the court relied on movant's confession and Jermaine Franklin's testimony regarding the bricks of cocaine he saw in the bags to determine the amount of cocaine involved in the conspiracy, and the Third Circuit affirmed the court's determination. *See Huggins*, 392 F. App'x at 59-60, 63. And finally, at the suppression hearing, the court found the testimony of the three law

35

enforcement agents who heard movant's confession to be more credible than movant's version of events surrounding his confession. See Huggins, 392 F. App'x at 57-58.

In turn, overwhelming evidence of movant's guilt was introduced at trial, including: (1) movant's confession to both the drug and money laundering conduct; (2) the wiretap evidence, which included numerous coded drug conversations; and (3) the evidence of movant's use of automobile purchases at 1800 Motorcars to disguise his assets. When the court's aforementioned rulings are viewed in conjunction with this evidence, movant cannot demonstrate a reasonable probability that the court would have determined that an innocent person had been convicted and have granted a new trial. Therefore, the court will deny movant's instant ineffective assistance allegation as meritless.

### 5. Trial counsel failed to contest administrative forfeiture

At the time of his arrest in August 2003, the government seized various items of movant's property pursuant to warrants. See United States v. Huggins, 385 F. App'x 225, 226 (3d Cir. 2010). The DEA sent notices of forfeiture via certified mail to movant at the Salem County Correctional Facility where he was held pending trial. Id. at 226. After nobody filed a claim regarding the property, those items were administratively forfeited by the DEA. Movant subsequently filed a motion to set aside the forfeiture notices on the ground that he did not receive notice. Id. The government sought summary judgment, which the court granted. (D.I. 332; D.I. 333; D.I. 334) Movant appealed, and the Third Circuit affirmed the court's judgment. See Huggins, 385 F. App'x at 227. The Third Circuit held that the procedures used to provide prisoners with

36

certified mail in this instance comported with due process, and actual notice to the defendant was not constitutionally required. *Id.* at 226-27.

In this claim, movant contends that counsel was ineffective for failing to pursue the seized property which, in turn, caused it to be forfeited. Specifically, he asserts that, when he asked counsel about the property that was seized, counsel told him not to worry, because the property would be returned to movant when they won his case. (D.I. 368 at 27) Movant argues that this advice was incorrect; his property would not have been returned even if he had not been convicted at trial, because the DEA had already succeeded in having his property administratively forfeited.

There is no Sixth Amendment right to counsel in a civil forfeiture matter, which includes administrative forfeiture proceedings and motions to set aside a declaration of forfeiture under 18 U.S.C. § 983(e). *See Austin v. United States,* 509 U.S. 602, 608 (1993)("The protections provided by the Sixth Amendment are explicitly confined to criminal prosecutions."). Thus, the court will deny the instant claim because it is not cognizable in this § 2255 proceeding. *See, e.g., Santos v. United States,* 2007 WL 4149721 at *3 (D. R.I. Nov. 19, 2007).

### 6. Trial counsel represented while under a conflict of interest

Movant contends that trial counsel were per se ineffective because they represented him while operating under a conflict of interest. *See Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980)(in certain circumstances an actual conflict of interest can constitute per se ineffective assistance of counsel). Movant provides the following information to support his contention:

37

a. Trial counsel were simultaneously representing an individual named "Khalif" in an unrelated criminal case.

b. The same confidential informant whose information was used in the search warrant for movant's residence had also provided information against "Khalif."

c. Trial counsel had an opportunity to cross-examine the informant during a hearing in "Khalif's" case.

d. Prior to the hearing, the prosecution offered "Khalif" a plea deal to avoid the hearing, and specifically to avoid giving trial counsel an opportunity to cross-examine the informant in such a way that would have been beneficial to movant.

e. Trial counsel allowed "Khalif" to take the plea deal; had they not done so, the cross-examination of the informant might have exposed vital information which would have affected movant's case.

The alleged informant, whom movant identifies as "TK", was not a witness for the government at trial. According to movant, the government relied on information from "TK" in its warrant application and affidavit leading to the search of the case.

In its answer, the government explains that it believes the Khalif case referenced by movant is the case *United States v. Gandy*, No. 04-10-SLR. Gandy was originally charged in this district in February 2004 with various narcotics offenses, and was also represented by trial counsel. On September 1, 2004, the court conducted a teleconference in the *Gandy* case, during which trial counsel sought to have an alleged government informant produced for an evidentiary hearing. Trial counsel claimed that the informant was named "TK", and further noted to the court that "TK" was also involved in movant's case. (D.I. 383 at 57)

The court ordered the government to produce "TK" for the Gandy hearing. However, the court limited the scope of any examination of "TK":

GOVERNMENT: . . . as to the scope of this person's, "TK's" testimony, is Your Honor going to exclude any testimony about whether this person has any time acted as an informant for the government?

COURT: Yes. The only issue, [counsel], [is "TK's" alleged involvement in securing Gandy's confession] . . . What this individual has done in other cases is of no relevance as far as I am concerned.

(D.I. 383 at 57) "TK" did not appear for the evidentiary hearing and, therefore, did not testify. The court took testimony from other witnesses, issued a warrant for "TK", and continued the hearing until he was in custody. Two days later, trial counsel withdrew his motion to have "TK" produced. The court scheduled a trial for Gandy for February 2005, but Gandy eventually pled guilty.

Movant contends that trial counsel were operating under a conflict of interest when they represented him because they chose not to pursue the hearing to cross-examine "TK" in order to benefit Gandy's case which, in turn, hurt movant's defense. This argument is unpersuasive. In *United States v. Morelli*, the Third Circuit explained that an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). Looking at an attorney's duties to both clients, an "actual conflict exists only if the proposed alternative strategy (a) could benefit the instant defendant and (b) would violate the attorney's duties to the other client." *Id.* at 811. For the following reasons, the court concludes that trial counsels' decision to forego questioning "TK" in Gandy's case did not amount to ineffective assistance in movant's case.

To begin, movant fails to allege, and the record does not indicate, a plausible alternative strategy that trial counsel could have pursued with respect to Gandy's case that would have benefitted movant's case. Notably, when trial counsel informed the court that the alleged informant in Gandy's case was also involved in movant's case, the court ruled that it would exclude any testimony obtained during the Gandy hearing about whether "TK" had acted as an informant for the government in other cases. Thus, even if "TK" had testified in Gandy's case (which he did not), trial counsel would not have been able to elicit any information from "TK" that related to movant. At best, then, trial counsel theoretically might have been able to glean some general impeachment material about "TK", but that information would have had no bearing on the court's analysis of the search warrant allegedly predicated on his information. (D.I. 81, Memorandum Order Denying Motion to Suppress Evidence at 4 (reviewing court confines itself to the facts presented in a warrant to determine if there is a substantial basis for probable cause)). Given these circumstances, the court concludes that movant has failed to demonstrate that trial counsel failed to pursue a plausible alternative defense strategy because of his representation of Gandy. Hence, no actual conflict of interest existed.

Accordingly, the court will deny movant's conflict of interest argument as meritless.

### 7. Appellate counsel provided ineffective assistance

After being appointed to represent movant on direct appeal, appellate counsel filed movant's opening brief asserting two claims: (1) the trial court erred in denying movant's Rule 33 motion for new trial; and (2) trial counsel was ineffective. Soon

thereafter, movant wrote to the Third Circuit Court of Appeals expressing dissatisfaction with appellate counsel. In a series of pro se motions that followed, movant sought the appointment of new appellate counsel or, alternatively, permission to file a supplemental pro se brief. Eventually, on February 12, 2010, movant was granted permission to file a pro se brief. Movant then filed a fifty-eight page long brief which raised approximately seven additional claims. The Third Circuit addressed, and denied, all the claims raised in both movant's counseled and pro se briefs.

In this claim, movant alleges that appellate counsel was ineffective for failing to file a complete brief on appeal. This argument does not warrant relief. Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Smith v. Robbins*, 528 U.S. 259, 272 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983). In movant's case, the Third Circuit permitted movant to file a pro se supplemental brief raising any and all issues of his choosing, in addition to the issues presented by appellate counsel. The Third Circuit considered, and rejected, all the issues presented in both the counseled and pro se briefs. Thus, movant was not prejudiced by appellate counsel's failure to raise movant's pro se issues in the counseled brief.

Movant also contends that appellate counsel was ineffective for failing to seek certiorari review after his direct appeal was denied. However, there is no constitutional right to counsel for a litigant seeking to file a certiorari petition to the Supreme Court.

41

See *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, the court will deny

movant's instant contention as meritless.

## B. Claims Two, Four, Five, Six, and Nine: Barred as Previously Litigated

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court

to vacate, set aside, or correct his sentence on the grounds that

> the sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence, or that
> the sentence was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack.

28 U.S.C. § 2255. However, "[o]nce a legal argument has been litigated and decided

adversely to a criminal defendant at his trial and on direct appeal, it is within the

discretion of the district court to decline to reconsider those arguments if raised again in

collateral proceedings under 28 U.S.C. § 2255." *United States v. Orejuela*, 639 F.2d

1055, 1057 (3d Cir. 1981). As a general rule, re-litigation of a claim considered on

direct appeal is barred unless: (1) there is newly discovered evidence that could not

reasonably have been presented at the original trial; (2) there is a change in applicable

law; (3) counsel provided ineffective assistance; or (4) other circumstances indicate that

the accused did not receive full and fair consideration of his federal constitutional and

statutory claims. *See United States v. Palumbo*, 608 F.2d 529, 533 (3d Cir. 1979);

*United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *Davis v. United States*,

417 U.S. 333, 342 (1974).

The issues raised in claims two, four, five, six and nine were fully considered by

the Third Circuit during movant's direct appeal, and there are no other *Palumbo* factors

compelling post-conviction review. As a result, the court declines to review the claims

42

again. Accordingly, the court will deny claims one, two, four through six, and nine as procedurally barred.

## C. Claims Three and Seven: Procedurally Defaulted

The relief sought under 28 U.S.C. § 2255 is reserved for extraordinary circumstances. See Brecht v. Abrahamson, 507 U.S. 619 (1993). If a movant fails to raise a claim on direct appeal, that claim is procedurally defaulted and cannot thereafter be reviewed pursuant to 28 U.S.C. § 2255 unless the movant demonstrates cause for the default and prejudice resulting therefrom, or that he is actually innocent. Bousley v. United States, 523 U.S. 614, 616, 621-23 (1998). To establish cause for a default, a movant must demonstrate that "some objective factor external to the defense impeded counsel's efforts to raise the claim." United States v. Essig, 10 F. 3d 968, 979 (3d Cir. 1993), abrogated on other grounds as explained in United States v. Peppers, 482 F. App'x 702, 704 n.5 (3d Cir. 2012). Significantly, an attorney's failure to preserve or raise a claim on direct appeal can constitute cause for a movant's procedural default only if counsel's failure amounts to constitutionally ineffective assistance of counsel. See Hodge v. United States, 554 F.3d 372, 379 (3d Cir. 2009). To establish prejudice, a movant must show that "that the errors at [his] trial . . . worked to [his] actual and substantial disadvantage, infecting [his] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Notably, if the movant fails to demonstrate cause, a court is not required to determine if the movant was prejudiced by the default. See Smith v. Murray, 477 U.S. 527, 533 (1986). For the following reasons, the court concludes that claims three and seven are procedurally defaulted.

## 1. Claim three: Fourth Amendment violation

In claim three, movant contends that his Fourth Amendment rights were violated because the search warrant executed at his home was not based on probable cause; rather, it was based on perjured testimony provided by Ricardo Rogers and incorporated by Special Agent Miller. Although movant filed a pre-trial motion to suppress the search warrant, that motion alleged that the search warrant lacked probable cause because it was based on perjured statements provided by a confidential informant; the motion did not assert that the search warrant was based on perjured statements provided by Rogers. In addition, although movant on direct appeal presented an argument challenging the denial of his suppression motion, he did not present the instant Fourth Amendment claim in his appeal to the Third Circuit Court of Appeals. As such, claim three is defaulted.

Movant does not allege cause for this default. Even if the court were to liberally construe his allegation that appellate counsel provided ineffective assistance as an attempt to establish cause for not presenting the Fourth Amendment claim on direct appeal, the attempt is unsuccessful. As previously explained, the court has concluded that appellate counsel was not ineffective, primarily because movant filed a fifty-eight page supplemental pro se brief on appeal that asserted seven additional claims. Consequently, appellate counsel's failure to include this claim does not constitute cause because movant himself could have included the claim, but did not.

In the absence of cause, the court will not address the issue of prejudice. Moreover, because movant has failed to demonstrate new reliable evidence of his

actual innocence, the miscarriage of justice exception to the procedural default doctrine is inapplicable. Accordingly, the court will deny claim three as procedurally defaulted.

Alternatively, the court concludes that review of claim three is barred by the doctrine articulated in *Stone v. Powell*, 428 U.S. 465, 494 (1976). Pursuant to *Stone*, a federal court cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See Wright v. West*, 505 U.S. 277, 293 (1992). Although *Stone* involved a state prisoner's habeas application under 28 U.S.C. § 2254, several courts of appeal have applied its reasoning to § 2255 cases so long as the defendant had the opportunity to litigate the claim on direct appeal. *See Ray v. United States,* 721 F.3d 758, 761-62 (6th Cir. 2013); *Brock v. United States,* 573 F.3d 497, 500 (7th Cir. 2009); *United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2002); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993); *see also United States v. Johnson*, 457 U.S. 537, 562 n. 20 (1982). The court finds the reasoning provided by those courts persuasive and, therefore, also concludes that *Stone* applies in the context of § 2255 motions.

Here, movant clearly had a full and fair opportunity to litigate his Fourth Amendment claim in this case. As previously noted, movant filed a pre-trial motion to suppress the evidence seized from his residence, and that motion challenged the probable cause of the search warrants. Moreover, movant could have, but did not, present the instant challenge regarding the suppression motion to the Third Circuit in his direct appeal. Accordingly, the court will alternatively deny claim three as barred by *Stone*.

45

## 2. Claim seven: forfeiture violated Double Jeopardy Clause

In claim seven, movant challenges the court's imposition of a forfeiture money judgment at the time of sentencing. Specifically, he contends that the imposition of the $292,000 money judgment in addition to the administrative forfeiture of his property violates the Double Jeopardy clause. This claim is procedurally defaulted, because movant did not present it to the Third Circuit on direct appeal. Once again, because movant does not assert any cause for his failure to raise the instant claim on direct appeal, the court will not address the issue of prejudice. The court further notes that the miscarriage of justice exception does not apply. Thus, the court will deny claim seven as procedurally defaulted.

## D. Claim Eight: Court's Continuous Erroneous Decisions

In claim eight, movant contends that the court violated his due process rights by basing its decisions on facts he has proven to be false, namely, the alleged perjured testimony of Rogers and Franklin. The court will deny this claim because it merely re-asserts claims already presented and denied in this decision. Alternatively, the court will deny this claim as meritless, because no facts have been "proven to be false."

## E. Claims Ten and Eleven: Newly Discovered Evidence of Government's Fraud and Movant's Innocence

In his final two claims, movant contends that he is entitled to relief because he has newly discovered evidence of his actual innocence, consisting of: (1) two letters from Rogers showing that the prosecution knowingly presented evidence it knew was false in violation of his due process rights; and (2) IRS documents stating that he owed almost $50,000 in taxes for the years 1997-2003, which show that he had a legitimate

46

and lawful income for those years and contradicts the government's knowingly false theory that movant's wealth was unexplained.

As a general rule, a claim of actual innocence, if proven by new reliable evidence, permits a court to review the merits of an otherwise defaulted claim and acts as a gateway for excusing procedurally defaulted claims. *See House v. Bell*, 547 U.S. 518, 554-55 (2006). Whether or not a freestanding claim of actual innocence is cognizable on federal habeas review remains an open question in Supreme Court jurisprudence. *Id.* Nevertheless, even if a stand-alone claim of actual innocence were cognizable on § 2255 review, the threshold showing of actual innocence would be high, requiring a movant to demonstrate (a) "new reliable evidence" that was previously unavailable and establishes that it is more likely than not that no reasonable juror would have convicted him, and (b) that he exercised reasonable diligence in bringing his claim. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993); *Schlup v. Delo*, 513 U.S. 298, 324, 327-28 (1995); *Reed v. Harlow*, 448 F. App'x 236, 238 n.2 (3d Cir. 2011). For the following reasons, the court concludes that claims ten and eleven do not warrant relief.

First, the instant two claims merely re-state movant's argument that the government committed fraud on the court and that his conviction should be vacated because it was fraudulently obtained. The court has already rejected movant's assertions of fraud. Therefore, further review of movant's contentions is unnecessary.

Moreover, movant's alleged "newly discovered evidence" does not constitute new reliable evidence sufficient to establish his actual innocence. As explained by the Supreme Court, new statements from witnesses provided years after the crime are inherently suspect and are to be viewed with "a degree of skepticism." *Herrera*, 506

U.S. at 423; Schlup, 513 U.S. at 331. At most, Rogers' letters and recorded conversations (that were written or occurred more than two years after movant's conviction) reflect Rogers' opinion about movant's innocence and do not constitute tangible evidence of any actual fraud that was committed or actual reliable evidence of movant's innocence. As for movant's contention regarding the IRS documents, movant has failed to demonstrate that these documents were unavailable during his trial or direct appeal. Thus, the court also denies claims ten and eleven for failing to establish the Schlup standard.

## IV. PENDING MOTIONS

### A. Hazel-Atlas Motion

Prior to filing the instant § 2255 motion, movant filed a "Hazel-Atlas motion for relief from judgment," alleging that his judgment should be vacated because of fraud committed by the United States Attorney's Office. (D.I. 354) The government filed a response in opposition, stating that the motion should be denied for the following reasons: (1) the Hazel-Atlas doctrine is limited to civil cases and controlling Third Circuit precedent precludes its applicability in a criminal case; (2) the motion actually collaterally attacks his criminal action and should be considered as § 2255 motion; and (3) movant's allegations are meritless and should be rejected as an improper attempt to relitigate motions already decided against him. (DI. 357)

In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), the Supreme Court held that a civil litigant can seek to set aside a judgment after the expiration of time limit for do so in very limited circumstances by showing that adverse counsel committed fraud upon the court. However, pursuant to well-settled Third Circuit

48

precedent, the *Hazel-Atlas* principle does not extend to criminal cases. *See United States v. Washington*, 549 F.3d 905, 912, 914 (3d Cir. 2008). Rather, in a criminal case, a judgment of acquittal (and, by extension, a motion for new trial) may only be entered in conformity with the Federal Rules of Criminal Procedure. *Id.* at 912, 917. The Third Circuit reasoned that, "to the extent there might have at one point been inherent power in the court [to vacate a criminal sentence based on fraud upon the court], such power was abrogated by Congress pursuant to [18 U.S.C.] § 3582(c) and Federal Rule of Criminal Procedure 35(a)." *Id.* at 905.

Accordingly, because the *Hazel-Atlas* doctrine is limited in applicability to civil cases, the court will deny movant's *Hazel-Atlas* motion.[7]

### B. Motion to Compel

During the pendency of this proceeding, movant filed a "motion to compel Assistant United States Attorney Keith M. Rosen to affirm or deny interrogatories/facts before he is allowed to withdraw his appearance as co-counsel on behalf of the United States of America." (D.I. 381) The court has concluded that movant's § 2255 motion does not warrant relief. Therefore, it will deny this motion as moot.

### C. Motion for Bail and Release from Custody

Finally, movant filed a "motion for bail and release from federal custody until a decision is made by the district court on [movant's] 2255 motion." (D.I. 391) Having

_____

[7]The court also notes that movant filed his original § 2255 motion (D.I. 358) six days after the government filed its response to his *Hazel-Atlas* motion, and his § 2255 motion essentially re-asserts the same grounds raised in the *Hazel-Atlas* motion. Therefore, the denial of movant's *Hazel-Atlas* motion will not prejudice movant because the grounds raised therein have been considered in this § 2255 proceeding.

determined that the instant § 2255 motion must be denied, the court will deny movant's motion for bail and release as moot.

## V. EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; see also United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005); United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that movant is not entitled to relief because his arguments are either procedurally barred or lack merit. Therefore, the court will deny movant's § 2255 motion without an evidentiary hearing.

## VI. CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence without an evidentiary hearing. Additionally, the court will not issue a certificate of appealability because movant's § 2255 motion fails to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable. See 28 U.S.C. § 2253(c)(2)("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011). An appropriate order will follow.